## Charley Vivian v. State.

### No. 1870.   Decided January 8, 1913.

**1.—Assault to Rape—Charge of Court—Affirmative Defense.**

Where, upon trial of assault to rape, it was shown by the evidence that defendant assaulted prosecutrix and attempted to have sexual intercourse with her, the question as to what hour of the day it occurred did not raise an affirmative defense, and there was no error in the court's failure to charge on this phase of the case, as the charge of the court properly applied the law to the facts and instructed the jury to acquit defendant if they had a reasonable doubt of his guilt.

**2.—Same—Charge of Court—Ability to Commit an Assault.**

Where, upon trial of assault with intent to rape, the State proved the assault, but the defendant contended that he was not at the place where the offense occurred at the hour of the day the witnesses fixed said assault, and the question as to the exact time or the hour of the day when said assault was committed was indefinite, there was no error in the court's failure to instruct the jury that the defendant must have been within such distance of the prosecutrix as to place it within his power to commit a battery.   Articles 1012 and 1008, Penal Code.

**3.—Same—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to rape, the evidence sustained the conviction of aggravated assault, and the court submitted both the issue of assault with intent to rape and aggravated assault, there was no error.

Appeal from the District Court of Erath.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of aggravated assault; penalty, a fine of $300 and six months' imprisonment in the county jail.

The opinion states the case.

*C. Nugent* and *Chandler & Pannill,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—In this case appellant was indicted, charged with assault with intent to rape on his stepsister, a girl under fifteen years of age.   When tried he was convicted of an aggravated assault, and his punishment assessed at a fine of $300 and imprisonment in the county jail for six months.

The girl, Ruth Farmer, testified that her father's house was burned, and her father, stepmother and herself were sleeping in the buggy shed. That on the day when she alleges the assault occurred, her father and stepmother had gone to Dublin after a windmill, and defendant and Bob Grider were digging holes and preparing the ground on which to erect the windmill, working near the buggy shed; that she was in the buggy shed stringing beans when defendant and Grider came in after water. Grider went back to his work, but defendant remained in the room. She says: "After Grider had gone, the defendant came over to me and put his hands on my breasts, and afterwards picked me up from the chair and put me down on the mattress, and got down and pulled down my drawers and then pulled up my clothes and got on top of me and tried to put his privates in mine, and was working himself up and down when I told him to quit—that he was hurting me. He then got up and went out, and then it was that I discovered the white sticky stuff on my clothes. These latter statements are exactly what I told before the court of inquiry at Lingleville and what I told before the grand jury, and the statements are true and the whole thing occurred in that way."

Grider testified that he was working at Mr. Farmer's that day as testified to by Ruth Farmer, and that Mr. Farmer and his wife had gone to town after a windmill; that he (Grider) and appellant went into the buggy shed to get a drink of water; that appellant remained in the shed when he (Grider) went back to his work, some twenty or twenty-five feet away; while appellant was in the shed he heard Ruth say: "Quit, you are hurting me." That he recognized the voice as that of Ruth, and appellant and Ruth were the only persons in the shed at that time. Shortly after this appellant came out of the shed, when Ruth left and went to Mr. Ritchie's.

It appears from the record that Ruth made complaint to no one—did not tell her father or stepmother on their return. However, Grider reported the matter to the officers, and they went and got the girl, and she testified before the justice of the peace, her statement being written down and sworn to by her, she testifying at that time just as she testified on this trial. After defendant's arrest, she says her stepmother asked her about the matter, and she told her stepmother that appellant had not done anything to her. She was then carried by her father and stepmother to the office of appellant's lawyers when she reiterated the statement that appellant had done nothing to her, and they wrote down her statement, which was signed by her and introduced in evidence. When the grand jury met she was summoned before that body, and when sworn testified to the same facts she had testified to before the justice of the peace, and testified to on this trial.

Her explanation of why she made those statements to her stepmother and appellant's lawyers is rather indefinite, but she on the trial says they were not true, and that appellant did make the assault

on her as testified to before the justice of the peace, before the grand jury, and at this trial.

Appellant did not testify, but on cross-examination of Ruth he elicited from her the statement that it was about eleven o'clock when appellant made the assault on her, and that it was after this she left and went to Mr. Ritchie's; he also elicited from Grider that it was about this hour when he claimed the assault was made, and Ruth left and went to Mr. Ritchie's.

He then introduced Dave Wright, who testified that on the day Mr. Farmer went to Dublin after the windmill he also went to bring some things out for him; that in the morning he telephoned Mrs. Ritchie to inquire if Mr. Farmer was going to town, and later Mrs. Ritchie telephoned him that Mr. Farmer had gone. He then says: "I do not remember the time I left home, but I hardly ever get away before eight o'clock. It was sometime before eight, however, when I called up Mrs. Ritchie, and also before eight when Mrs. Ritchie told me that Farmer had gone." On cross-examination he stated: "I do not have any definite recollection as to the time I started that morning. It was about sundown when I got back to Farmer's place in the evening," further testifying that it was about seven miles to Dublin.

On this testimony appellant claims he raised an affirmative defense, in that as Ruth had testified she was at Mrs. Ritchie's when Mrs. Ritchie telephoned Mr. Wright that her father had gone, and the testimony of Mr. Wright would make this eight o'clock in the morning, while the testimony of Ruth and Mr. Grider would have the assault occur before she went to Mrs. Ritchie's, and they fix the hour at 11 o'clock, or three hours after Mr. Wright says he received the telephone message. This we do not think raises any affirmative issue to be submitted to the jury. Under it they would perhaps have been authorized to find that Mr. Grider had testified falsely, and no assault in fact took place, and this was doubtless the contention of appellant in the trial court, but this issue was sufficiently presented in the charge of the trial court, who instructed the jury they must find defendant guilty of making the assault, on Ruth beyond a reasonable doubt, or they would acquit, and in further instructing the jury as to the presumption of innocence, etc.

The court instructed the jury: "The use of any unlawful violence upon the person of another with intent to injure her, whatever be the nature or degree of violence, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing within itself or by words accompanying it an immediate intention, coupled with an ability to commit a battery, is an assault. An assault becomes aggravated when committed by an adult male upon the person of a female or child." Appellant's contention is that this charge did not present all the law of the case,—that the court should have instructed the jury as to the provisions of Article 1012 as well as Article 1008, that is, the defendant must have been within such distance of the per-

son assaulted as to make it within his power to commit a battery. He bases the contention, not on any positive testimony that he was not so situated, while the prosecuting witness testifies positively that he picked her up in his arms and carried her and put her on the bed, and then committed an assault, yet he states that as he fixed the hour at eleven o'clock on his cross-examination of her, and that she then went to Mrs. Ritchie's and was there when she (Mrs. Ritchie) telephoned Mr. Wright, and Mr. Wright testifying as he did, this would place her at Mrs. Ritchie's at eleven o'clock, and appellant "would not be within such distance as to commit the assault," and the court should have so instructed the jury. The testimony would go to impairing or breaking down her testimony, but would raise no affirmative issue as contended for by appellant. The witness Wright stated he had no definite recollection as to the time he started that morning, and while his testimony as a whole would show that he was under the impression that it was prior to eight o'clock, basing it upon his usual custom, yet he is not positive as to the hour, neither are the other witnesses as to the hour of the alleged transaction, it all being based on their impressions after lapse of time, but there is nothing vague or indefinite about the offense being committed, and this fact is not sought to be disputed, except by showing that the prosecuting witness had made contradictory statements to appellant's mother and his attorneys, which she readily admitted having done. The record discloses that she was not voluntarily prosecuting this case, but when the officers were apprised by Grider of the commission of the offense she, whenever called and put under oath, has unvaryingly told the same story, and which in many particulars is corroborated by Grider.

To affect her credit as a witness the defendant elicited testimony that two of her brothers had assaulted appellant, but when the evidence disclosed that this was subsequent to the alleged assault on Ruth by appellant, we can readily understand why they had attacked him when informed he had thus treated their minor sister.

The court instructed the jury: "Now, if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Charley Vivian, in the County of Erath and State of Texas, on or about the 29th day of May, 1911, did then and there make an assault in and upon the person of Ruth Farmer, with the intent then and there on the part of the said defendant to ravish and have carnal knowledge of her, the said Ruth Farmer, by then and there entering her female organ with his male organ by actual penetration, with or without her consent and with or without the use of force, and if you further believe from the evidence beyond a reasonable doubt the said Ruth Farmer was then and there a female under the age of fifteen years, and that she was not at said time the wife of the defendant, then you will find the defendant guilty as charged in the indictment and assess his punishment at confinement in the penitentiary for any term of years, not less than two, in your discretion. If you believe

from the evidence beyond a reasonable doubt that the defendant is guilty of some grade of offense but have a reasonable doubt as to whether or not he is guilty of the offense of any assault with intent to rape; that is, as to whether or not he is guilty of the offense of attempting to have carnal knowledge of the said Ruth Farmer by then and there actually penetrating her female organ with his male organ, then you will give the defendant the benefit of such doubt and acquit him of the offense of an assault with intent to rape, and next consider whether he is guilty of the offense of an aggravated assault. And upon the latter issue you are instructed if you believe from the evidence in this case beyond a reasonable doubt that the defendant, in the County of Erath and State of Texas, on or about the date laid in the indictment, made in and upon the person of Ruth Farmer, with intent to injure her, the said Ruth Farmer, with or without her consent and with or without the use of force, and you further believe from the evidence that said Ruth Farmer was then and there a female or child under the age of fifteen years, and that the defendant was then and there an adult male; but you should have a reasonable doubt as to whether or not he intended at the time to enter the person of the said Ruth Farmer, by entering her female organ with his male organ by actual penetration, but should further believe beyond a reasonable doubt that he was guilty of using undue familiarity with the said Ruth Farmer by then and there fondling her person and by then and there putting his male organ against her female organ but you have a reasonable doubt as to whether or not the defendant did intend to penetrate Ruth Farmer's female organ with his male organ, then you will find the defendant guilty of an aggravated assault, and so say in your verdict, and assess his punishment at a fine of not less than twenty-five dollars nor more than one thousand dollars, or by imprisonment in the county jail for not less than one month nor more than two years, or by both such fine and imprisonment, in your discretion.''

Appellant has selected several sentences of the charge and criticises same, but when read as a whole it is not subject to the criticisms, but is a full and fair presentation of the law as applicable to the testimony. The jury found appellant guilty of an aggravated assault only, and the evidence amply supports their verdict,—in fact would have sustained a verdict for the higher grade of offense submitted, and appellant and his counsel have cause for congratulation that they did not so find.

The judgment is affirmed.                          *Affirmed.*